UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

GARY S. WYKLE a/k/a GARY S. WYCKEL and
ALEJANDRO CORTES

Defendants.

## COMPLAINT

Plaintiff Securities and Exchange Commission alleges and states as follows:

## I.   INTRODUCTION

1. From at least March 2013 through July 2017, The Republic Group, Inc. ("Republic"), and its president, Gary Wykle ("Wykle"), and its securities sales person, Alejandro Cortes ("Cortes") raised approximately $9.4 million from at least 150 investors through sales of securities in unregistered transactions. The securities were in the form of promissory notes. Republic solicited prospective investors primarily through Wykle and Cortes, and through Republic's website and at least one sales seminar.

2. Republic, through Wykle, made material misrepresentations and omissions to investors and prospective investors, and engaged in a scheme to defraud and a course of conduct designed to deceive investors. Specifically, Wykle falsely claimed that investor funds would be used to make short-term loans at high interest rates to travel industry businesses in the Dominican Republic, and that Republic would be merging with a publicly traded company. He also omitted

to disclose to investors that a substantial portion of the offering proceeds were being used to pay sales commissions to Cortes.  In addition, Wykle misappropriated and misused approximately $2.5 million in investor funds and operated a Ponzi scheme.

3.      By engaging in this conduct, Wykle violated Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a) and 77e(c)]; Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]; Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]; and Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].  Unless restrained and enjoined, Wykle is reasonably likely to continue to violate the federal securities laws.

4.      By engaging in this conduct, Cortes violated Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)] and Section 15(a)(1) of the Exchange Act. [15 U.S.C. § 78o(a)(1)].  Unless restrained and enjoined, Cortes is reasonably likely to continue to violate the federal securities laws.

## II.  DEFENDANTS AND RELATED ENTITIES

### A.     Defendants

5.      Wykle, age 72, resides in Ronceverte, West Virginia.  During the relevant time period, Wykle was president of Republic.

6.      Cortes, age 58, resides in Miami, Florida.  During the relevant time period, Cortes was a securities salesperson of Republic.  Although Cortes held the title of executive vice-president of Republic, he was not involved in the running of the business or making business decisions for the company.

### B. Related Entities

7. Republic was a Florida corporation established in April 2006 with its principal place of business in Miami, Florida and offices in Puerto Rico. Republic is now defunct.

8. TRG Global, SRL ("TRG Global") was a Dominican Republic corporation that purportedly merged with Republic in March 2017. TRG Global was owned and controlled by Wykle.

## III. JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa].

10. This Court has personal jurisdiction over the Defendants, and venue is proper in the Southern District of Florida, because, among other things, many of the acts and transactions constituting violations of the Securities Act and Exchange Act occurred in this district. In addition, Republic had offices in this district, and Cortes resides in this district.

## IV. FACTUAL BACKGROUND

### A. Republic's Unregistered Offering of Securities through Wykle and Cortes

11. Between March 2013 and July 2017, Republic, through Wykle and Cortes, raised approximately $9.4 million from about 150 investors residing in Florida and Puerto Rico, through sales of securities in unregistered transactions. Republic's securities were in the form of promissory notes issued through its "Promissory Note Program."

12. Republic solicited prospective investors primarily through Wykle and Cortes. Some investors were directed to Republic's website, which had general information about the

company, and others were given written materials which described Republic and its Promissory Note Program.

13. Republic's written materials described it as a "financial services" company "with offices strategically located throughout North America, Central & South America, and the Caribbean, as well as European and Asian representative offices that service the Global Marketplace." The materials claimed that Republic, among other things, offered "non-traditional financial services primarily to the 'under-banked' segment of the international marketplace."

14. Generally, Republic's promissory notes offered investors an interest rate of 2.5% per month for a term of 15 months or 3% per month for 29 months.  During the early years of the offering, Republic would offer higher interest rates for the first one to three months as an enticement to investors.  For example, with respect to the 15-month notes, Republic paid some earlier investors a rate of 10% for the first month, 5% for the next two months, and then 2% for the remaining twelve months.  Earlier investors in the 29-month notes received 10% for the first three months and then 2% for the duration of the term of the note.  The promissory notes would automatically renew unless investors notified Republic at least 45 days prior to maturity of their intent to withdraw their funds.

15. Investors sent their money to Republic either by check or wire transfer.  Investor funds were deposited into Republic's bank accounts and Wykle was the sole signatory on the accounts.

16. After sending in their money, investors received a promissory note signed by Wykle using the alias "Gary Wyckel" reflecting their investment in Republic.  Investors would also receive monthly account statements from Republic, along with their purported monthly interest payments.

17. Wykle and Cortes both had direct communications with investors and prospective investors regarding Republic's investment opportunity through face-to-face meetings, emails, and phone calls. However, because Cortes speaks Spanish, he was the primary contact with prospective investors, the majority of whom spoke only with Cortes. Cortes met with some prospective investors in person and spoke with others by telephone.

18. At least one investor stated that she learned about Republic's Promissory Note Program during a seminar she and numerous other investors attended that the company held at a hotel in Puerto Rico. At that meeting, Wykle gave a presentation about the investment opportunity to prospective investors and Cortes answered questions investors had in Spanish. The investor who attended the seminar stated that there she also received written materials about Republic and the investment program.

19. Republic paid Cortes an undisclosed 15% commission for bringing in new investor funds, which came out of the investor's principal investment.

    **B.**     **Republic's Fraudulent Scheme**

        **1.**     **False Statements and Omissions by Wykle**

20. Wykle made material misrepresentations and omissions to investors and prospective investors concerning the use of investor funds and Republic's purported merger with a publicly traded company. Wykle told investors and prospective investors, and instructed Cortes to tell prospects, that Republic's offering proceeds would be used to make high interest loans to travel industry businesses, such as hotels in the Dominican Republic for renovations and furniture purchases. Republic and Wykle claimed that these were short-term loans (six to twelve months) and that businesses paid an interest rate of 8% to 12% per month on the loans. During the latter years of the offering, investors were also told that Republic was in the business of purchasing

distressed loan portfolios or debt from companies in bulk at a discounted rate and collecting on that debt.

21. Contrary to what was represented to investors, Republic never made any loans to travel industry businesses or other companies. Nor did Republic ever purchase distressed loans or debts from companies. Thus, Republic did not generate any revenues from its operations.

22. With regard to the use of funds, Wykle omitted to disclose to investors and prospective investors that a portion of their money would be used to pay sales commissions of 15% to Cortes for bringing in investors.

23. On at least one occasion, Wykle also made false statements to investors regarding Republic's purported merger with a public company. Specifically, in July 2016, Republic sent an email to investors under Cortes' name announcing that it was planning to merge with a publicly traded company. In this email, investors were told that the merger would "significantly enhance" the company's profile and open up a "very large public market for raising capital." According to the email, the merger would make the cost of capital much cheaper than the Promissory Note Program, thus increasing Republic's "bottom line profit." The email urged investors to make additional investments with Republic prior to the merger being completed, while the company continued to offer 2.5% to 3% interest per month. However, during the releveant period, Republic was not in the process of merging with a publicly traded company.

### 2. Misuse and Misappropriation of Investor Money by Wykle

24. Of the $9.4 million in investor money deposited into Republic's accounts, approximately $6.37 million was paid out to investors as interest payments, and about $282,000 was paid out as investor redemptions.

25.     Wykle misappropriated and misused approximately $2.5 million in investor funds from the Republic bank accounts.  Specifically, about $172,000 was paid to Wykle via checks he wrote to himself, about $90,000 was taken out by him through cash withdrawals, $788,000 was transferred to TRG Global, a company Wykle controlled, and an additional $24,000 was transferred to Alliance Unlimited, LLC, another company he controlled.  Wykle also used at least $183,000 in investor money to pay for, among other things, travel, hotel and restaurant expenses.

26.     In addition, at least $1.28 million in investor funds were used by Wykle to pay undisclosed sales commissions to Cortes both in his individual name and through Global Choice Advisory, Inc., a company Cortes controlled.

### 3.      **The Continuing Fraud by Wykle as the Scheme Unravels**

27.     By March 2017, Republic did not have enough new investor money to pay interest payments to existing investors and the Ponzi scheme began to collapse.  With investors demanding to know why their interest payments had stopped, Wykle embarked on a convoluted scheme to lull investors.

28.     In one instance, on or around March 22, 2017, Wykle sent a letter to investors claiming that Republic was "in the process of finalizing a financing facility" and that upon closing of the financing, all principal and interest payments would be repaid in full to investors by April 15, 2017.  However, during the relevant period, Republic was never finalizing a financing facility.

29.     In a separate instance, Wykle created an elaborate story that Republic had merged with TRG Global, a company purportedly in the business of purchasing distressed loan portfolios and collecting on bad debt, in an apparent attempt to shift blame for the delay in interest payments onto this new entity.  Investors were informed about the merger between Republic and TRG Global sometime in March 2017.

30. That same month, investors received correspondence from TRG Global entitled "Memorandum of Notification" claiming that Republic had to suspend investor interest payments because TRG Global was the victim of an embezzlement scheme that exhausted the company's liquidity. In this memorandum, investors were also notified that they would be receiving new promissory notes from TRG Global for the amount outstanding on the promissory notes issued by Republic and that TRG Global would be in a position to begin repaying investors within 10 days.

31. In early July 2017, investors received a letter from TRG Global claiming that repayments of principal amounts to investors would begin during the first week of the month. Accompanying this letter was a "Collateralized Promissory Note" issued by TRG Global to each investor for the total principal amount of his or her investment in Republic. The new promissory notes had an annual interest rate of 10% and were purportedly collateralized by all portfolios of loans and accounts receivable owned by TRG Global. The letter and the new notes were purportedly both signed by Luz C. Molineaux, the president of TRG Global.

32. The information Wykle disseminated to investors regarding TRG Global and its merger with Republic was false and misleading. Unbeknownst to investors, TRG Global was another company owned and controlled by Wykle, and Wykle was impersonating Luz Molineaux. In addition, TRG Global had virtually no assets and never lost money as a result of an embezzlement scheme.

## V. CLAIMS FOR RELIEF

### COUNT I

**Violations of Sections 5(a) and 5(c) of the Securities Act**
**As to both Defendants**

33. The Commission repeats and realleges paragraphs 1 through 32 of its Complaint.

34. No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities issued by Republic described in this Complaint and no exemption from registration existed with respect to these securities.

35. From approximately March 2013 until July 2017, Wykle and Cortes, directly and indirectly:

>   (a) made use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;
>   (b) carried or caused to be carried securities through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; or
>   (c) made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security,

without a registration statement having been filed or being in effect with the Commission as to such securities.

36. By reason of the foregoing Wykle and Cortes violated and, unless enjoined, are reasonably likely to continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## COUNT II
### As to Wykle only

### Fraud in Violation of Section 17(a)(1) of the Securities Act

37. The Commission repeats and realleges paragraphs 1 through 32 of its Complaint.

38. From approximately March 2013 until July 2017, Wykle, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, knowingly or recklessly employed devices, schemes or artifices to defraud.

39. By reason of the foregoing, Wykle violated, and, unless enjoined, is reasonably likely to continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT III
**As to Wykle only**

### Fraud in Violation of Section 17(a)(2) of the Securities Act

40. The Commission repeats and realleges paragraphs 1 through 32 of its Complaint.

41. From approximately March 2013 until July 2017, Wykle, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading.

42. By reason of the foregoing, Wykle violated and, unless enjoined, is reasonably likely to continue to violate Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

## COUNT IV
**As to Wykle only**

### Fraud in Violation of Section 17(a)(3) of the Securities Act

43. The Commission repeats and realleges paragraphs 1 through 32 of its Complaint.

44. From approximately March 2013 until July 2017, Wykle, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce and by the use of the mails, directly or indirectly negligently engaged in transactions, practices and courses of business which have operated, are now operating or will operate as a fraud or deceit upon the purchasers.

45. By reason of the foregoing, Wykle violated, and, unless enjoined, is reasonably likely to continue to violate Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

## COUNT V
### As to Wykle only

**Fraud in Violation of Section 10(b) and Rule 10b-5(a) of the Exchange Act**

46. The Commission repeats and realleges paragraphs 1 through 32 of its Complaint.

47. From approximately March 2013 until July 2017, Wykle, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly employed devices, schemes or artifices to defraud in connection with the purchase or sale of securities.

48. By reason of the foregoing, Wykle violated, and, unless enjoined, is reasonably likely to continue to violate Section 10(b) and Rule 10b-5(a) of the Exchange Act [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(a)].

## COUNT VI
### As to Wykle only

**Fraud in Violation of Section 10(b) and Rule 10b-5(b) of the Exchange Act**

49. The Commission repeats and realleges Paragraphs 1 through 32 of its Complaint.

50. From approximately March 2013 until July 2017, Wykle, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in connection with the purchase or sale of securities.

51. By reason of the foregoing, Wykle violated, and, unless enjoined, is reasonably likely to continue to violate, Section 10(b) and Rule 10b-5(b) of the Exchange Act [15 U.S.C. §

## COUNT VII
### As to Wykle only

**Fraud in Violation of Section 10(b) and Rule 10b-5(c) of the Exchange Act**

52.     The Commission repeats and realleges Paragraphs 1 through 32 of its Complaint.

53.     From approximately March 2013 until July 2017, Wykle, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly engaged in acts, practices and courses of business which have operated, are now operating or will operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

54.     By reason of the foregoing, Wykle directly and indirectly violated, and, unless enjoined, is reasonably likely to continue to violate Section 10(b) and Rule 10b-5(c) of the Exchange Act [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(c)].

## COUNT VIII

**Violation of Section 15(a)(1) of the Exchange Act**
### As to both Defendants

55.     The Commission repeats and realleges paragraphs 1 through 32 of its Complaint.

56.     From approximately March 2013 until July 2017, Wykle and Cortes made use of the mails or any means or instrumentality of interstate commerce to effect transactions in securities, or to induce or attempt to induce the purchase or sale of securities, without being associated with a broker or dealer that was registered with the Commission in accordance with Section 15(b) of the Exchange Act, 15 U.S.C. § 78o(a).

57.     By reason of the foregoing, Wykle and Cortes directly and indirectly violated, and unless enjoined, are reasonably likely to continue to violate, Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

## VI. RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests the Court find that Defendants committed the violations of federal securities laws alleged in this complaint and:

### A. Permanent Injunction

Issue a Permanent Injunction:

1. restraining and enjoining Wykle, his agents, servants, employees, attorneys, and representatives, and all persons in active concert or participation with him, and each of them, from violating Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)]; Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]; Section 10(b) and Rule 10b-5 of the Exchange Act [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]; and Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)]; and

2. restraining and enjoining Cortes, his agents, servants, employees, attorneys, and representatives, and all persons in active concert or participation with him, and each of them, from violating Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)] and Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

### B. Disgorgement

Issue an Order directing Wykle and Cortes to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts and/or courses of conduct alleged in this Complaint.

### C. Civil Penalty

Issue an Order directing Wykle and Cortes to pay a civil money penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

D.  **Further Relief**

Grant such other and further relief as may be necessary and appropriate.

E.  **Retention of Jurisdiction**

Further, the Commission respectfully requests the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Dated:  August 31, 2020

/s/ Andrew O. Schiff
S.D. Fla. No. A5501900
Regional Trial Counsel
Direct Dial:  (305) 982-6390
Fax:  (305) 536-4154

Raynette R. Nicoleau
Fla. Bar No. 278210
Senior Counsel
Direct Dial:  (305) 982-6308
Fax:  (305) 536-4154

Attorneys for Plaintiff
Securities and Exchange Commission
801 Brickell Avenue, Suite 1950
Miami, FL 33131